```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
JOSEPH DeLAGO, BRUCE FINLAYSON,     :
PATRICIA SALMON, and                :
WILLIAM LOCKHORN,                   :
                                    :
                Plaintiffs,         :      04 Civ. 3193 (JFK)
                                    :      OPINION & ORDER
                                    :
        -against-                   :
                                    :
THE ROBERT PLAN CORPORATION,        :
                                    :
                Defendant.          :
------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/28/06

APPEARANCES:

    For Plaintiffs Joseph DeLago, et al.:

        Guy L. Heinemann, Esq.
        Murray & Hollander
        400 Park Avenue
        New York, NY 10022

        Donald Glenn Davis, Esq.
        Butler, Fitzgerald & Potter, PC
        350 Fifth Avenue, Suite 6215
        New York, NY 10118

    For Defendant the Robert Plan Corporation:

        Eun Hai Grace Park, Esq.
        Donald S. Zakarin, Esq.
        Tom J. Ferber, Esq.
        William L. Charron, Esq.
        Pryor, Cashman, Sherman & Flynn, LLP
        410 Park Avenue
        New York, NY 10022

JOHN F. KEENAN, United States District Judge:

**JOHN F. KEENAN, United States District Judge**

In this contract action for collection on four subordinated promissory notes, Plaintiffs move for summary judgment seeking default interest, statutory interest, attorneys' fees, and dismissal of Defendant's counterclaim for attorneys' fees. Defendant cross-moves for partial summary judgment. Both motions are denied.

## Factual Background

Plaintiffs, four shareholders of the Peter Group, Inc. ("PG"), jointly sold their collective 39.6 percent interest in PG to Defendant, the Robert Plan Corporation ("RPC"), for 14.125 million dollars.[1] (Compl. ¶ 1.) The joint agreement of sale provided for initial payments to Plaintiffs totaling 5.65 million dollars. (Compl. ¶ 1.) RPC issued promissory notes (the "Notes") to Plaintiffs for the remaining 8.475 million dollars. (Compl. ¶ 1.)

## The Notes

Under the terms of the Notes, each identical except for the names of the holders and the amounts due, RPC was to pay Plaintiffs in three annual installments on May 15, 2001, May 15,

---

[1] Plaintiffs are four of seven shareholders who jointly sold their collective interest in PG to RPC pursuant to a joint agreement. (Compl. ¶ 13.) Unless otherwise noted, this decision refers only to the four Plaintiffs.

2

2002, and May 15, 2003, with each annual installment totaling 2.825 million dollars. (Pls.' Ex. 1A at 1.)

According to their terms, the Notes do not bear interest unless an "Event of Default" occurs, which includes "default in making any payment of principal or interest payable under this Note when due and payable for any reason." (Pls.' Ex. 1A at 2.) If a default occurs, the holders may accelerate payment of the entire principal (Pls.' Ex. 1A at 3), and collect default interest on the outstanding balance (Pls.' Ex. 1A at 3).

The right to accelerate and collect default interest is subject to the subordination provisions of Annex A to the Notes, (Pls.' Ex. 1A at 3), which provide:

> Notwithstanding any provision of this Subordinated Promissory Note, Holder agrees that for so long as a Blockage Period is in effect, it shall not ask, demand, accelerate, sue for, take or receive from RPC or any of its subsidiaries, and RPC agrees not to make payment of and will cause its subsidiaries not to make payment of or in respect of the Subordinated Promissory Note unless and until . . . the Blockage Period is no longer in effect . . . .

(Pls.' Ex. 1A, Annex A at 6.)

The blockage period is in effect "upon the receipt by RPC of a written notice [of default] from or on behalf of the holders of at least a majority of the principal amount of such Senior Debt." (Pls.' Ex. 1A, Annex A at 1-2.) "Senior Debt" is defined as "any indebtedness of RPC or its subsidiaries under the ING Agreement." (Pls.' Ex. 1A, Annex A at 6.) The Notes define

3

the "ING Agreement" as an August 14, 1998 credit agreement between ING and RPC.[2] (Pls.' Ex. 1A at 3.)

The blockage period runs for 180 days or until the default is discharged or terminated, whichever is earliest. (Pls.' Ex. 1A, Annex A at 2.) The Notes allow "[a]ny number of notices" of blockage to be given. (Pls.' Ex. 1A, Annex A at 2.)

After the blockage ends, RPC "shall resume making any and all required payments in respect of this Subordinated Promissory Note including any missed payments." (Pls.' Ex. 1A at 1-2.)

The Notes also provide for attorneys' fees as follows:

> If this Note shall not be paid for any reason, including without limitation as a result of the effect of [the subordination provisions], and shall be placed by the Holder in the hands of any attorney for advise or collection, through legal proceedings or otherwise, RPC agrees to pay a reasonable attorney's fee to the Holder together with reasonable costs and expenses of advise or collection.

(Pls.' Ex. 1A at 4.)

According to the Notes, "[n]o consent or waiver by the Holder with respect to any action or failure to act which . . . would constitute a breach of any provision of the Note" is valid unless in writing signed by both parties. (Pls.' Ex. 1A at 4.) The Notes specify that the rights and liabilities of the parties are to be determined under New York law. (Pls.' Ex. 1A at 4.)

---

[2] A copy of this agreement and details about it were not provided to the Court.

4

The Alleged Blockage

By letter dated April 18, 2001, ING notified RPC of its blockage of RPC's payment to Plaintiffs. The letter, in its entirety, reads as follows:

> In accordance with the Credit Agreement dated August 14, 1998, as amended, between ING and The Robert Plan, ING does hereby exercise its right to block the $3,000,000[3] Peter Group payment due this May 2001.

(Pls.' Ex. 8.)

By letter dated May 14, 2001, RPC gave notice to Plaintiffs that it would not pay the first installment:

> ING . . . has exercised its rights under Annex A to block the installment payments due to you under the . . . Notes. We are now prevented from making, and you are prevented from receiving, any payments under the Notes . . . for the next 180 days.

(Pls.' Ex. 3.) Though not mentioned in this letter, Defendant classifies the blockage as one based on a "non-monetary" default by RPC of its obligations to ING. (Answer ¶ 19.)

On May 15, 2001, RPC failed to pay the first installment (Compl. ¶ 23), and on May 18, 2001, Plaintiffs attempted to invoke the acceleration clause of the Notes (Pls.' Ex. 1F).

Because the blockage period was to expire after 180 days, ING attempted to renew it by letter to RPC dated October

---

[3] 3 million dollars was the entire amount due to the seven shareholders on May 15, 2001. Of this amount, 2.825 million dollars was due to the four plaintiffs in this action.

5

17, 2001:

> In accordance with the Credit Agreement . . . between ING and The Robert Plan, ING does hereby exercise its right to block the $3,000,000[4] Peter Group payment due this May 2001.

(Pls.' Ex. 15.) In a November 14, 2001 letter, RPC informed Plaintiffs of the purported renewal. (Pls.' Ex. 19.)

ING notified RPC of another 180-day extension by letter dated May 7, 2002 (Pls.' Ex. 21), which was forwarded to Plaintiffs on May 14, 2002 (Hollander Aff. ¶ 44). The letter from ING to RPC reiterates the language of the first two notices and also attempts to block the second installment due May 15, 2002. The letter continues: "To avoid any misunderstanding, this block is in effect for the 180 day period beginning May 7, 2002 and will expire November 7, 2002." (Pls.' Ex. 21.)

On May 15, 2002, RPC failed to pay the second 2.825 million dollar installment. (Compl. ¶ 27.) On June 3, 2002, RPC paid Plaintiffs the 5.65 million dollars of principal from the two missed payments. (Compl. ¶ 28.)

## Procedural Posture

Plaintiffs filed a complaint on or around April 27, 2004, seeking default interest, statutory interest, and attorneys' fees, alleging RPC's failure to make timely payments constituted an event of default under the Notes, which triggered

---

[4] See supra note 3.

6

Plaintiffs right to interest and attorneys' fees. Defendant filed its answer on or around June 16, 2004, which includes a counterclaim for attorneys' fees based on Plaintiffs alleged bad faith in bringing and conducting the lawsuit.

Plaintiffs now move for summary judgment, arguing that "RPC's obligations for interest and attorneys' fees are clear from the plain, unambiguous language" of the Notes and that Defendant's counterclaim has no legal support. (Pls.' Mem. Law. at 1.)

Defendant cross-moves, arguing that around April 2002, Plaintiffs orally covenanted not to sue for default interest and attorneys' fees in return for payment of all principal due and reasonable interest on the first installment. (Def.'s Mem. Law at 25-26.) Regardless of the oral agreement, Defendant argues that Plaintiffs were never entitled to interest because a blockage was in effect based on RPC's non-monetary default of its agreement with ING. (Def.'s Mem. Law at 9.) Defendant also asserts that there is a legal basis for its counterclaim, and the claim, therefore, should not be dismissed as a matter of law. (Def.'s Mem. Law at 32.)

## Discussion

### Summary Judgment Standard

A motion for summary judgment may be granted under Rule 56 of the Federal Rules of Civil Procedure if the entire record

7

demonstrates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). When viewing the evidence, the Court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990); see McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997); see also Anderson, 477 U.S. at 255. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. "[T]he plaintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial." Id. at 257.

Summary judgment on an action to enforce a promissory note is appropriate where the intent of the parties is clear and unambiguous, leaving "'no material question of fact concerning execution and default.'" AM Cosmetics, Inc. V. Solomon, 67 F. Supp. 2d 312, 324 (S.D.N.Y. 1999) (quoting AAI Recoveries, Inc. V. Pijuan, 13 F. Supp. 2d 448, 450 (S.D.N.Y. 1998)). On the other hand, "'when the meaning of the contract is ambiguous and the intent of the parties becomes a matter of inquiry, a question

8

of fact is presented which cannot be resolved on a motion for summary judgment.'" Postlewaite v. McGraw-Hill, Inc., 411 F.3d 63, 67 (2d Cir. 2005) (quoting Ruttenberg v. Davidge Data Sys. Corp., 626 N.Y.S.2d 174 (App. Div. 1995)).

Analysis

1. Alleged Oral Agreement Not to Sue Creates Question of Fact on Plaintiffs' Claims

Defendant creates a threshold question of fact regarding Plaintiffs' claims by alleging that Plaintiffs orally agreed not to sue for interest or attorneys' fees in exchange for Defendant's promise to pay blocked principal and reasonable interest on the first installment. Plaintiffs dispute the existence of an oral agreement. Plaintiffs reference an April 8, 2002 letter, written around the same time as the alleged oral agreement, where RPC mentions "interest due" to Plaintiffs and never refers to an agreement. Defendant argues that the "interest due" was in reference to money owed under the oral agreement. Both arguments are colorable. Deciding which to accept would force the Court to make credibility determinations, which is forbidden on a summary judgment motion. See Anderson, 477 U.S. at 249.

Plaintiffs argue that, even if an oral agreement exists, it would be unenforceable because the terms of the Notes

9

require such agreements to be in writing.[5] New York law,
however, enforces oral agreements notwithstanding contract
provisions that require a writing where there has been partial
performance or reliance that "'unequivocally refer[s]'" to the
oral agreement. John Street Leasehold LLC v. F.D.I.C., 196 F.3d
379, 382 (2d Cir. 1999) (quoting Towers Charter & Marine Corp. v.
Cadillac Ins. Co., 894 F.2d 516, 521-22 (2d Cir. 1990)).
Defendant claims its June 3, 2002 payment was made unequivocally
in reference to the oral agreement because "[t]here was no other
reason for RPC to act against its self-interest and to pay
Plaintiffs in violation of the ING block . . . ." (Def.'s Mem.
Law at 27.)

There is not sufficient evidence for the Court to
determine whether there was an unequivocal payment in reference
to an oral agreement. For present purposes, it is enough that an
enforceable oral agreement not to sue could reasonably exist. As

---

[5] Though Plaintiffs do not raise the issue, whether New York
law would enforce the oral agreement even if expressly permitted
by the contract is also in question. While New York law enforces
oral releases supported by consideration, releases without
consideration must be in writing. Royal Ins. Co. Of America v.
Cathy Daniels, Ltd., 684 F. Supp. 786, 793 (S.D.N.Y. 1988).
Defendant claims the promise was supported by consideration;
specifically, that Defendant would pay principal even though it
was blocked and would pay interest on the first installment even
though it was not owed under the terms of the Notes. As
discussed infra in this opinion, whether principal and interest
were already owed at the time are questions of fact. Therefore,
whether the agreement is enforceable cannot be decided as a
matter of law because consideration turns on resolution of these
issues.

10

a result, material issues of fact preclude summary judgment on Plaintiffs' claims.[6] See Topps Chewing Gum, Inc. v. Imperial Toy Corp., 686 F.Supp. 402, 408 (E.D.N.Y. 1988) ("[T]he waiver issue frequently involves questions of fact, and cannot be decided on a summary judgment motion."), aff'd, 895 F.2d 1410 (2d Cir. 1989).

2. The Language of the Notes Is Ambiguous

Even if there were not a material question of fact regarding an oral agreement, the Court would still be compelled to deny summary judgment because the language of the Notes is ambiguous regarding how a blockage is effectuated and the rights of the parties during a blockage.

According to the language of the Notes, a blockage is in effect "upon the receipt by RPC of a written notice [of default] from or on behalf of the holders of at least a majority of the principal amount of such Senior Debt." (Pls.' Ex. 1A at 1-2.) Here, ING, the senior creditor, sent and RPC received written notice of a blockage. The letters, however, do not mention any

---

[6] Plaintiffs and Defendant also disagree about whether the alleged oral agreement should be considered a "release" or a "covenant not to sue." See 29 Samuel Willston & Richard A. Lord, A Treatise on the Law of Contracts § 73:5 (4th ed. 1993) (explaining that a "release" is a present abandonment of a known right and a "covenant not to sue" is a promise to exercise forbearance on a possible cause of action). Because whether Plaintiffs had any rights to relinquish, as discussed infra, is a question of fact, the Court cannot determine as a matter of law whether the agreement is technically a "release" or a "covenant not to sue."

11

default by RPC. It is not unreasonable to assume that the parties intended some sort of specific detail of a default to be cited in order to protect the subordinated creditor from a sham blockage, especially where the alleged default is non-monetary and can be predicated on ministerial infractions. Because the parties' intent is a matter of inquiry, the Court cannot decide as a matter of law that a blockage period under the Notes was effectively triggered. Postlewaite v. McGraw-Hill, Inc., 411 F.3d 63, 67 (2d Cir. 2005)

There is also a material question of fact regarding the effect of a blockage on Plaintiffs' right to accelerate and collect default interest. The subordination provisions of Annex A are ambiguous in this regard. Section 1.14 says: "[S]o long as a Blockage Period is in effect, [Plaintiffs] shall not ask, demand, [or] accelerate" payment on the Notes. This language could be read as completely preventing Plaintiffs' right to accelerate and collect default interest in the event of a blockage. Such a reading is supported by other language in Annex A that allows RPC to "resume making . . . payments . . . including any missed payments" after the blockage ends. Notably, there is no mention of default interest in this language, and use of the word "resume" seems to anticipate regular installment payments after a blockage rather than acceleration of the entire

debt. However, because Section 1.14 uses the words "so long as," a reasonable mind could also read the blockage provision as merely deferring Plaintiffs' right to accelerate and collect default interest until the blockage is cleared. The Court cannot resolve such ambiguity on a summary judgment motion. See id.

3. Material Issue of Fact Precludes Summary Judgment Dismissing Defendant's Counterclaim

Defendant argues that Plaintiffs' claims are in bad faith and its accrual of attorneys' fees unreasonable, which should subject Plaintiffs to liability for attorneys' fees. Plaintiffs move for summary judgment, arguing the claim violates the American rule that legal fees are not recoverable unless authorized by contract or statute. While under the American rule, legal fees are generally not recoverable, courts permit imposition of legal fees against a losing party where the party has acted in bad faith. Hirschfeld v. Board of Elections, 984 F.2d 35, 40 (2d Cir. 1993). Whether a party acted in bad faith is generally a question of fact unless "uncontradicted proof" exists. See McKenna v. Case, 507 N.Y.S.2d 777 (App. Div. 1986).

The proof in this case is far from uncontradicted. Rather, both sides offer different versions of events. As a result, the Court denies Plaintiffs' motion to dismiss Defendant's counterclaim.

13

## Conclusion

For the reasons given, both summary judgment motions are denied. The parties are to appear before the Court on March 22 at 10AM for a scheduling conference.

SO ORDERED.

Dated:   New York, New York
         February 28, 2006

_____
JOHN F. KEENAN
United States District Judge